UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Winthrop Resources Corporation,
a Minnesota corporation,

Plaintiff,

v.

Anastasi Construction Company, Inc.,
a California corporation, and
Wayne G. Anastasi,

Defendants.

Civil File No. 01-787 (PAM/SRN)

**MEMORANDUM AND ORDER**

---

This action arises from a dispute over the termination of a lease for computer equipment. Plaintiff claims that Defendants failed properly to terminate the lease as of March 1, 2001, because they did not return the computer equipment. Accordingly, Plaintiff claims that the lease renewed for an additional one-year term.[1] Defendants argue that return of the equipment was impossible because the lease had been assigned to a third-party which is now bankrupt. This matter is before the Court on cross-Motions for Summary Judgment. For the following reasons, the Court grants Plaintiff's Motion but limits Plaintiff's recovery to past-due lease charges, late fees, costs, attorneys' fees, taxes, and the casualty loss value

[1] During the hearing on this matter, Plaintiff conceded that it was only seeking payments for an additional one-year term. In light of this concession, the Court will not consider whether Defendants can be held liable for subsequent one-year terms until the computer equipment at issue is returned.

MAR 2 5 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAR 2 5 2002
DEPUTY CLERK

of the equipment and denies Defendants' Motion.

**BACKGROUND**

The facts in this case are undisputed. Plaintiff Winthrop Resources Corporation ("Winthrop") is a Minnesota corporation that leases computer and other electronic equipment. In January 1998, Winthrop and Defendant Anastasi Construction Company, Inc. ("Anastasi Construction") entered into a Lease Agreement for certain computer equipment and software. (See Gendler Aff. Exs. A-B.) In February, Wayne G. Anastasi, Anastasi Construction's President, entered into a Personal Lease Guaranty with Winthrop, personally guaranteeing Anastasi Construction's obligations under the Lease Agreement. (See id. Ex. C.)

The Lease Agreement commenced on March 1, 1998, and provided for an initial term of 36 months. (See id. Ex. A at ¶ 1.) The lease charges for the computer equipment at issue were $8,202 per month. (See id. Ex. B.) The Lease Agreement was to continue from year to year after the initial lease term until terminated by written notice at least 120 days prior to the termination date. (See id. Ex. A at ¶ 1.) Written notice of termination, however, would be ineffective, according to the terms of the lease, if the equipment was not returned to Winthrop. (See id. at ¶ 7.)

In June 1999, Winthrop, Anastasi Construction, Mr. Anastasi, and a third party, Executive Telecards, Inc., d/b/a eGlobe, Inc. ("eGlobe") entered into an "Assignment and Assumption" contract under which all of Anastasi Construction's "rights and interests" in

the equipment were transferred to eGlobe. (See id. Ex. D.) Specifically, the Assignment and Assumption provided that

> [t]his Assignment and Assumption Agreement ("the Agreement"), which is made, entered into as of May 10, 1999, shall cause all of the rights and interests (not obligations) in certain Equipment that is being leased to Anastasi Construction Company, Inc. . . . to Executive Telecards, Inc., a Delaware Corporation doing business as E-GLOBE, Inc., a Delaware Corporation (the "Assignee") . . .

(Id.) The Assignment and Assumption went on to state that Anastasi Construction, the assignor, would "remain principally and primarily liable for all monies, obligations, debts, liabilities, covenants and agreements associated with the Assigned Equipment and the Lease Agreement." (Id.) Similarly, Mr. Anastasi agreed in the Assignment and Assumption to remain "as Guarantor under the Lease Agreement and [to] continue[] to be unconditionally bound by all of the terms and obligations of the Lease Guaranty dated January 13, 1998." (Id.) Pursuant to this Assignment and Assumption, from June 1999 forward, eGlobe maintained possession and control of the equipment at issue in this case.

In September 2000, Anastasi Construction sought to terminate the lease as of March 1, 2001, by written notice to Winthrop. (See id. Ex. E (Sept. 14, 2000, letter from J.B. Mirassou to Winthrop).) The equipment, however, was not and has not been returned to Winthrop. (See id. ¶ 9.) It appears that the last payment made on the Lease Agreement was $4,101 in October 2000. (See Hintz Aff. Ex. F (March 23, 2001, letter from Paul L. Gendler to J.B. Mirassou).) On April 18, 2001, eGlobe filed bankruptcy in the United States Bankruptcy Court for the District of Delaware. (See id. ¶ 18, Ex. G.)

On March 4, 2001, Winthrop filed the instant action against Defendants alleging that because they had not returned the leased computer equipment, the Lease Agreement automatically renewed for another year. The Lease Agreement provides that in the event of a default Winthrop can: (1) recover all accrued and unpaid lease charges and other items under the lease; (2) accelerate and cause to become immediately due and recover the present value of all lease charges and other amounts due and/or likely to become due from the date of the default to the end of the lease term using a discount rate of six percent; (3) cause to become immediately due and payable and recover the casualty loss value of the equipment; and/or (4) obtain possession of the equipment. (Gendler Aff. Ex. A at ¶ 17.) Winthrop therefore seeks past-due lease charges and late fees through March 1, 2002, costs, attorneys' fees, taxes, and possession of the equipment.

Defendants contend that they are only liable for the principal amount due on the Lease Agreement through the date of their purported cancellation of the lease on March 1, 2001. According to Defendants, this amount equals $36,909. To reach this conclusion, Defendants claim that pursuant to the express terms of the Assignment and Assumption eGlobe became responsible for performance under the Lease Agreement. Alternatively, Defendants argue that the Assignment and Assumption was ambiguous and that the Court should construe such ambiguity against Winthrop. Defendants also argue that they are excused from paying additional lease charges and late fees and from returning the computer equipment under the doctrines of impossibility, impracticability, and frustration of purpose because eGlobe is now

bankrupt. Finally, Defendants contend that even if they are liable for lease charges through March 1, 2002, they are not liable for the casualty loss value of the equipment.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." Celotex, 477 U.S. at 327.

### B. Merits

Notwithstanding Defendants' contentions to the contrary, this case is relatively uncomplicated. The Lease Agreement provides that it is to be governed "by the internal laws (as opposed to conflicts of law provisions) and decisions of the state of Minnesota." (Gendler Aff. Ex. A at ¶ 25.) In Minnesota, as in other jurisdictions, a court's role in interpreting a contract is to ascertain and give effect to the intention of the parties. See Karim v. Werner, 333 N.W.2d 877, 879 (Minn. 1983) (citations omitted). "Where a contract is unambiguous, the court must deduce the parties' intent from the language used." Metro. Sports Facilities Comm'n v. Gen. Mills, Inc., 470 N.W.2d 118, 123 (Minn. 1991) (citations omitted); Kauffman Stewart v. Weinbrenner Shoe Co., Inc., 589 N.W.2d 499, 502 (Minn. Ct.

App. 1999) ("It is improper to go beyond the actual language of the contract where the wording is clear."); Reserve Mining Co. v. Mesabi Iron Co., 172 F. Supp. 1, 10 (D. Minn. 1959). Ambiguity only exists if a contract's language is reasonably susceptible to multiple interpretations. See Current Tech. Concepts, Inc. v. Irie Enters., Inc., 530 N.W.2d 539, 543 (Minn. 1995) (citations omitted); Kauffman Stewart, 589 N.W.2d at 502.

In this case, under the plain and unambiguous language of the Assignment and Assumption, Anastasi Construction agreed to remain principally and primarily liable for all monies, obligations, debts, liabilities, covenants, and agreements associated with the equipment and the Lease Agreement, and Mr. Anastasi agreed that he continued to be unconditionally bound by all the terms and obligations of the Lease Agreement and Guaranty. Defendants seek to circumvent this plain language by arguing that under Minnesota law "[w]hen an assignment is made, the assignee assumes the duties under the contract." SO Designs U.S.A., Inc. v. Roller Blade, Inc., 620 N.W.2d 48, 54 (Minn. Ct. App. 2000). According to Defendants, "the fundamental purpose of the [Assignment and] Assumption [was] the complete transfer of rights and responsibilities and assumptions by eGlobe of the possession of the property." (Defs.' Mem. at 8.) This purpose, Defendants contend, is evidenced by the language of the Assignment and Assumption providing that eGlobe "unconditionally agree[d] that the terms, conditions, covenants, duties and obligations contained in the Lease Agreement are valid and legally enforceable against the Assignee." (Gendler Aff. Ex. D.) At the very least, Defendants claim that the language of

the Assignment and Assumption is contradictory and ambiguous and that such ambiguity should be resolved against Winthrop.

Defendants' focus on eGlobe's consent to be bound and held liable under the terms of the Lease Agreement, however, is misplaced. As the court in SO Designs went on to state, "[t]he assignor cannot be divested of the duty to perform without the express consent of the other party to the contract." SO Designs, 620 N.W.2d at 54; Epland v. Meade Ins. Agency Assocs., Inc., 564 N.W.2d 203, 207 (Minn. 1997) (citations omitted) ("A party may not divest itself of liability on a contract without the consent of the other party to the contract."); Vetter v. Sec. Cont'l Ins. Co., 567 N.W.2d 516, 521 (Minn. 1997) (citations omitted) ("In substance, the original obligor may not divest itself of liability without the consent of the obligee."). Indeed, in order to substitute one party for another under a contract, a novation, "the obligee must consent[] to the delegation of duties, and agree[] to release the original obligor from its responsibilities under the contract." Epland, 564 N.W.2d at 207.

In this case, while it is clear that Winthrop consented to Anastasi Construction's delegation of its duties under the Lease Agreement to eGlobe, it is equally clear that Winthrop did not release either Anastasi Construction or Mr. Anastasi from their responsibilities under Lease Agreement. According to the express terms of the Assignment and Assumption, then, Anastasi Construction and Mr. Anastasi are liable. The fact that eGlobe also agreed to be liable under the Lease Agreement does not alter this result or create any ambiguity in the Assignment and Assumption.

Defendants alternatively argue that they should not be held liable for any charges arising from the Lease Agreement after March 1, 2001, because of the doctrines of impossibility, impracticability, and frustration of purpose. Essentially, Defendants contend that the bankruptcy of eGlobe rendered return of the computer equipment impossible and therefore cut off any liability that Defendants may have had under the Lease Agreement.

The doctrine of impossibility or impracticability provides an excuse for a party failing to perform its contractual obligations

> when, due to the existence of a fact or circumstances of which the promisor at the time of the making of the contract neither knew nor had reason to know, performance becomes impossible, or becomes impracticable in the sense that performance would cast upon the promisor an excessive or unreasonably burdensome hardship, loss, expense or injury . . . A mere difficulty of performance[, however,] does not ordinarily excuse the promisor.

Powers v. Siats, 70 N.W.2d 344, 348 (Minn. 1955). Similarly, the defense of frustration of purpose provides an excuse for non-performance when the parties' principal purpose in making the contract is frustrated by the occurrence of an event the non-occurrence of which was a basic or underlying assumption on which the contract was made. See City of Savage v. Formanek, 459 N.W. 2d 173, 176 (Minn. Ct. App. 1190).

It is unnecessary for the Court to consider Defendants' arguments that they are excused from performance by impossibility, impracticability, or frustration of purpose at length. In this case, the dispositive fact is that eGlobe did not enter into bankruptcy until April 18, 2001. The lease at issue had to be terminated or automatically renewed on March 1, 2001. Although it is uncontested that Defendants gave timely written notice of

termination, according to the express terms of the Lease Agreement, "[i]f the Equipment . . . is not at the Return Location within ten (10) days of the Return Date . . . then any written notice of termination delivered by Lessee shall become void . . ." (Gendler Aff. Ex. B at ¶ 7.) Defendants' failure to return the equipment by the middle of March automatically renewed the lease for an additional one-year term. (See id at ¶ 1.) Thus, Defendants' liability attached prior to any alleged impossibility or impracticability of performance.

Additionally, bankruptcy in a commercial context is a reasonably foreseeable contingency. Defendants, in fact, have admitted that eGlobe's default and failure to return the equipment "may have been foreseeable." (Defs.' Mem. at 12.) This admission is fatal to Defendants' claimed defenses. The defenses of impossibility or impracticability and frustration of purpose are not available where the event which renders performance impossible, impracticable, or frustrates the purpose of the contract could have been anticipated and provided for in the contract. See Powers, 70 N.W.2d at 348 (noting that the defense of impossibility applies in situations where unforseen events produce an excessive hardship on one of the parties which was not reasonably contemplated or expected at the time of contracting); J.J. Brooksbank Co., Inc. v. Budget Rent-A-Car Corp., 337 N.W.2d 372, 377 (Minn. 1983) (noting that the doctrines of impracticability and frustration of purpose "have at their core a requirement that some event must occur, the nonoccurrence of which was a basic assumption of the contract at the time it was made").

Defendants' final argument is that even if they are liable for lease payments through

March 1, 2002, they are not liable for the casualty loss value of the computer equipment. Paragraph 12 of the Lease Agreement establishes the formula for calculating the casualty loss value of the equipment. (See Gendler Aff. Ex. A at ¶ 12.) There is no debate that as of March 1, 2001, the casualty loss value of the equipment was $37,700. Defendants contend, however, that pursuant to the amortization calculus of the Lease Agreement, the casualty loss value of the equipment would have been zero by July 1, 2001. Accordingly, Defendants argue that if they are found liable for lease charges beyond July 1, 2001, they should not be held liable for the casualty loss value of the equipment.

As Winthrop points out, Defendants' reading of the Lease Agreement is untenable. Paragraph 12 of the Lease Agreement unambiguously provides that the casualty loss value shall be calculated "subject to the Loss amortized by the Monthly Lease Charges received by Lessor during the Initial Term . . . ." (Id.) The initial term of the lease was 36 months. Thus, the initial term ended on March 1, 2001, at which point the casualty loss value of the equipment was $37,700. After March 1, 2001, the Lease Agreement provides for no further amortization. Defendants are therefore liable for the $37,700 casualty loss value of the computer equipment at issue.

**CONCLUSION**

The undisputed facts establish that the Lease Agreement and the Assignment and Assumption are both clear and unambiguous. Pursuant to the terms of these two contracts, the Court finds, as a matter of law, that there was no novation, Defendants' non-performance

is not excused by impossibility, impracticability, or frustration of purpose, and Winthrop is entitled to collect $37,700 for the casualty loss value of the equipment at issue. Both Anastasi Construction and Mr. Anastasi are jointly and severally liable for this casualty loss value and for past-due lease charges, late fees, costs, attorneys' fees, and taxes. Because the computer equipment is subject to an automatic stay in bankruptcy proceedings, however, this Court will not grant Winthrop possession of the equipment. The parties are directed to seek return of the equipment through the bankruptcy court.

Accordingly, for the foregoing reasons, and upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No.16) is **DENIED** and Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 12) is **GRANTED** as follows:

1. Plaintiff is entitled to recover past-due lease charges at $8,202 per month for half of October 2000, through November 1, 2001, totaling $110,727;
2. Plaintiff is entitled to recover the accelerated amount of the lease charges due for December 1, 2001, through March 1, 2002, discounted by 6 percent, totaling $30,840;
3. Plaintiff is entitled to recover late charges of $14,945.31;
4. Plaintiff is entitled to recover $37,700 for the casualty loss value of the computer equipment at issue;
5. Plaintiff is entitled to recover a proportionate amount of taxes to be calculated

and submitted to the Court for approval within thirty (30) days of the date of this Order; and

6. Upon proper Motion, Plaintiff is entitled to recover its reasonable costs and attorneys' fees.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 23, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.